KAREN P. HEWITT
United States Attorney
CHRISTOPHER P. TENORIO
Assistant U.S. Attorney
California State Bar No. 166022
880 Front Street, Suite 6293
San Diego, California  92101-8893
Telephone: (619) 557-7843
Christopher.Tenorio@usdoj.gov

Attorneys for Plaintiff
United States of America

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Criminal Case No.  08CR0274-LAB |
| | ) | |
| Plaintiff, | ) | DATE:    March 17, 2008 |
| | ) | TIME:    2:00 p.m. |
| v. | ) | |
| | ) | GOVERNMENT'S RESPONSE AND |
| JORDAN ARNOLD, | ) | OPPOSITION TO DEFENDANT'S |
| | ) | MOTIONS TO: |
| Defendant. | ) | 1)   COMPEL DISCOVERY; AND, |
| | ) | 2)   LEAVE TO FILE FURTHER |
| | ) |       MOTIONS |
| | ) | |
| | ) | TOGETHER WITH STATEMENT OF |
| | ) | FACTS, MEMORANDUM OF POINTS AND |
| | ) | AUTHORITIES |
| | ) | |

COMES NOW the plaintiff, UNITED STATES OF AMERICA, by and through its counsel, Karen P. Hewitt, United States Attorney, and Christopher P. Tenorio, Assistant United States Attorney, and hereby files its response and opposition to Defendants' above-referenced motions. Said response is based upon the files and records of the case, together with the attached Statement of Facts and Memorandum of Points and Authorities.

//

//

//

**I.**

**STATEMENT OF FACTS**

In August, 2007, Jordan Arnold recruited into prostitution and employed A.A. and L.A., two juveniles.

A.A. was born in October, 1991. In August, 2007, A.A. met Jordan Arnold at a party.  A.A. truthfully told Arnold that she was 15 years old on the first evening they met.  After approximately one week, Arnold began recruiting A.A. to work for him as a prostitute.  A.A. relented after two days.

That same day, Arnold drove A.A. to El Cajon Boulevard and introduced her to Jessica King, who worked for Arnold as a prostitute. Arnold instructed King to teach A.A. how to solicit johns and otherwise operate as a prostitute.  King instructed A.A., but left working for Arnold in approximately September, 2007.

After working once on El Cajon Boulevard, Arnold explained that he would post A.A.'s picture on Craigslist.com to solicit johns. Arnold brought A.A. to a hotel to take pictures for the internet posting.  King used Arnold's mobile telephone to take pictures of A.A. in lingerie and provocative poses. A.A.'s photograph and ad were posted on the internet.  A.A. received telephone calls for "dates" shortly after the ads were posted.

At Arnold's instruction, A.A. made arrangements by telephone to meet johns at various motels in the Mission Valley or Sports Arena area.  Arnold and/or King usually drove A.A. to the hotels, A.A. performed a sexual act in exchange for money, A.A. called Arnold to pick her up, and A.A. gave all of the proceeds to Arnold.

L.A., the sister of A.A., was born in September, 1993. L.A. met Arnold at the same party in August, 2007. L.A. learned that A.A.

agreed to work as a prostitute for Arnold.  L.A. agreed to work as a prostitute for an associate of Arnold.  Pictures of her were also posted on Craigslist.  Arnold occasionally drove L.A. to "dates" also.  L.A.'s pictures were also found on Arnold's phone.  L.A. reported that she stopped working after Arnold's arrest on October 11, 2007.

On October 12, 2007, SDPD Vice Detectives and FBI agents arrested Arnold after he was found driving a suspected juvenile to complete an act of prostitution.  Arnold was accompanied by A.A.  Police officers transported Arnold to the police station.  There, they advised Arnold of his Miranda rights.  Arnold responded, "I'm gonna listen to my mom and I'm gonna get an attorney."  Agents stopped questioning.  Arnold, however, asked what type of questions the agents would have asked him.  When officers told Arnold that they would not ask him questions if he was asking for a lawyer, Arnold insisted on talking.

Arnold claimed he only wanted to be a good friend and help people do whatever they wanted to do.  Officers asked Arnold if he knew that the girl he transported was engaging prostitution at the hotels.  Arnold responded that he could not be sure because he was not personally present in the hotel room.  When asked how old A.A. was, Arnold stated she was 16 years old.

Arnold added, "I am assisting friends do what they want to do."  Because the encounters were consensual, Arnold claimed, "even prostitution is okay."  He admitted that A.A. told him that he was driving her to places in order for her to have sex with men in exchange for money.  He also admitted he helped her out financially by holding on to some of their money.

Arnold called his mother, Sylvia Arnold, several times from the San Diego County Jail after his arrest.  Recordings of the calls were

1 obtained. On October 12, 2007, Arnold instructed his mother to talk
2 to "them" because they are the "key to this whole thing."
3 Subsequently, Arnold told his mother to talk to "them" so there won't
4 be so many charges if they say the right stuff. Arnold told his
5 mother to tell them the only thing he did was drive them. Arnold
6 further instructed his mother to bring "the girls" to his arraignment.
7 Sylvia Arnold subsequently went to the home of A.A. and L.A. and spoke
8 to their mother. A.A. and L.A. then accompanied Sylvia Arnold to
9 Arnold's arraignment.

10 On October 16, 2007, Arnold again told his mother that "all they
11 have to do is say they did everything by themselves." He also
12 mentioned that they have to say that they didn't even give him money
13 for gas.

14 Two cell phones were on Arnold's person at the time of his arrest
15 on October 11, 2007. One cell phone contained the photographs of L.A.
16 which A.A. which had appeared on Craigslist.

17 **II.**

18 **POINTS AND AUTHORITIES**

19 **A.    THE GOVERNMENT WILL COMPLY WITH DISCOVERY OBLIGATIONS**

20 Defendant moves to compel discovery. Defendant's counsel
21 indicated that she believed Government counsel was out-of-town for
22 several weeks. The assumption is incorrect. Government counsel was
23 present for Defendant's detention hearing on February 12, 2008, left
24 that afternoon, and returned on February 20, 2008. The Government
25 provided discovery to Defendant on February 11, 2008. Except as
26 described below, the Court should deny Defendant's discovery requests.
27 //
28 //

### 1. Rule 16(a)(1)(A): Defendant's Statements

The Government has already disclosed all known written statements of Defendant, reports of recorded statements, and the substance of oral statements made by Defendant in response to questions by government agents in this case. The government will attempt to obtain copies of Defendant's recorded statements.

### 2. Arrest Reports, Notes and Dispatch Tapes

The Government at this time objects to the full production of the officers' handwritten or rough notes of interviews with prospective witnesses, or the production of any dispatch tapes or notes taken while listening to any dispatch tapes.

The discovery of rough notes of an interviewing agent are only potentially discoverable under the Jencks Act or Rule 16, and may be preserved to permit the district court to potentially decide whether they become discoverable. United States v. Harris, 543 F.2d 1247, 1252-53 (9th Cir. 1976); but see United States v. Griffin, 659 F.2d 932, 940 (9th Cir. 1982) (holding that the Harris court "actually failed to reach the issue of whether Rule 16 requires the preservation and subsequent production of an agent's rough notes of an interview with [a] defendant."). Whether notes must be produced must be decided on a case-by-case basis after an examination of the relevant facts, but not where the substance of the notes have been preserved in a formal memorandum. United States v. Pisello, 877 F.2d 762, 768 (9th Cir. 1976), cited in United States v. Williams, 291 F.3d 1180, 1191 (9th Cir. 2002).

Pre-trial production of rough notes of interviews with prospective witnesses is generally not required. See 8 U.S.C. § 3500. If rough notes do exist, they may become discoverable if they

constitute "statements" within the meaning of the Jencks Act. Notes of investigators are "statements," only if they are (1) writings made by the witness are "signed or otherwise approved or adopted" by him, or (2) accounts which are "a substantially verbatim recital" of the witness's oral statements "recorded contemporaneously with the making of such oral statement." 18 U.S.C. § 3500(e); Griffin, 659 F.2d at 936.

If such notes constitute "statements," then they are discoverable after the testimony of the person from whom the statement was obtained, where that person "signed or otherwise approved" the statement (18 U.S.C. § 3500(e)(1)), or they are verbatim recitals of the interviewee's oral statements to the interviewing agent (18 U.S.C. § 3500(e)(2)). Id. at 937. The notes would not become discoverable after the testimony of the interviewing agent because the "statement" does not represent the agent's own words. Id. at 938. Notes of observations taken while on surveillance are also generally incomplete and not discoverable because they do not comprise a substantially verbatim narrative of the officer's assertions. United States v. Bobadilla-Lopez, 954 F.2d 519, 521-522 (9th Cir. 1992); United States v. Spencer, 618 F.2d 605, 606-07 (9th Cir. 1980).

If such rough notes exist in this case of interviews with potential witnesses, they would also remain undiscoverable under Rule 16 unless they have been adopted verbatim by the interviewed witness or are otherwise discoverable pursuant to Brady. See e.g., United States v. Friedman, 593 F.2d 109, 119 (9th Cir. 1979). A statement of a government witness is discoverable pursuant to Rule 16 only to the extent that its production is compelled by the Jencks Act. Id. at 120; United States v. Walk, 533 F.2d 417, 419 (9th Cir. 1975).

Further, although Rule 16(a)(1) allows for the discovery of a written or recorded statement made by the defendant, notes of an investigator which incorporate the statements of a witness, which in turn contain oral "statements" allegedly attributable to the defendant, are not discoverable except as permitted by the Jencks Act. Walk, 533 F.2d at 418. Further, Rule 16(a)(1)(A) does not require the discovery of a defendant's oral statements unless they are made in response to interrogation by a person the defendant knows to be a federal agent. United States v. Hoffman, 794 F.2d 1429, 1432 (9th Cir. 1986). Notes of voluntary oral statements by the defendant, therefore, are not discoverable. Id.

### 3. Rule 16, and Brady: For All Purposes, Including Sentencing

The Government is well aware of, and will fully perform, its duty under, Brady v. Maryland, 373 U.S. 83 (1963), and United States v. Agurs, 427 U.S. 97 (1976). Accordingly, the Government will disclose exculpatory evidence within its possession that is material to the issue of guilt or punishment. Defendant is not entitled to all evidence known or believed to exist which is, or may be, favorable to the accused, or which pertains to the credibility of the Government's case. As the Ninth Circuit Court of Appeals stated in United States v. Gardner, 611 F.2d 770 (9th Cir. 1980):

> [T]he prosecution does not have a constitutional duty to disclose every bit of information that might affect the jury's decision; it need only disclose information favorable to the defense that meets the appropriate standard of materiality.

Id. at 774-75 (citations omitted). See also United States v. Sukumolachan, 610 F.2d 685, 687 (9th Cir. 1980) (the Government is not required to create non-existent exculpatory material); United States

v. Flores, 540 F.2d 432, 438 (9th Cir. 1976) (Brady does not create any pretrial discovery privileges not contained in the Federal Rules of Criminal Procedure).

The Government is unaware of any Brady material beyond that discussed above, and will produce such material if it becomes available. The Government is presently unaware of any criminal involvement by any prospective government witness, or that any prospective government witness is under investigation.

**4.  Rule 16(a)(1)(A), (B) and (C) and Fed. R. Evid. 404(b): Prior Arrests, Convictions Or Bad Acts**

The Government has provided Defendant with evidence of his prior criminal record and prior bad acts pursuant to Rules 16(a)(1)(A), (B) and (C).  The Government reserves the right to introduce such prior bad acts, and will address such evidence and its intentions in motions in limine to be filed separately according to the Court's scheduling orders.

**5.  Rule 16(a)(1)(C): Documents and Tangible Evidence and Evidence Seized**

In accordance with obligations under Rule 16(a)(1)(C) and 16(c), the Government will permit the Defendant to inspect and copy or photograph all books, papers, documents, photographs, tangible objects, buildings, or places, or portions thereof, which are within or may come within the possession, custody, or control of the Government, and which are material to the preparation of the Defendant's defense or are intended for use by the Government as evidence-in-chief at trial or were obtained from or belong to the Defendant.

//

### 6. **Expert Witness Notice Will Be Provided**

The Government will meet obligations pursuant to Fed. R. Crim. P. 16(a)(1)(E) to disclose information regarding expert witnesses. The Government will produce details regarding the nature of the expert's testimony, and the qualifications of the expert if and when a trial date is scheduled and any expert is obtained.

### 7. **Evidence of Bias, Motive to Lie, Impeachment or Criminal Investigations Regarding Government Witnesses**

The Government has provided all relevant statements from which Defendant may argue a witness is biased or prejudiced against Defendant. The Government is unaware of any evidence that prospective witnesses have a motive to falsify or distort testimony. The Government is aware of, and will comply with, its obligations regarding impeachment evidence pursuant to Brady v. Maryland, 373 U.S. 83 (1963), and United States v. Agurs, 427 U.S. 97 (1976).

### 8. **The Defendant Is Not Entitled to Witness Addresses**

The Government objects to Defendant's request for witness addresses. The objection is especially strong here where the witnesses are primarily juveniles who have expressed fear and repercussion of the defendant. Defendant may schedule access to witnesses through the Government or the witnesses' guardians.

### 9. **The Government Is Unaware of Favorable Defense Witnesses**

The Government is unaware of any witness who made a favorable statement concerning the Defendant, or of any statement that may be favorable to Defendant's defense, which have not already been provided in discovery.

//

### 10. **The Government Will Comply With *Giglio***

The Government has not made any promises, express or implied, to any government witnesses in exchange for their testimony in this case. Therefore, the Government is currently unaware of any discoverable impeachment information pursuant to Giglio v. United States, 405 U.S. 150 (1972).

### 11. **Jencks Act**

Consistent with the Jencks Act, 18 U.S.C. § 3500, the Defendant is not entitled to disclosure of witness statements prior to the witness testifying on direct examination at trial. The Government must produce these statements only after the witness testifies on direct examination. United States v. Taylor, 802 F.2d 1108, 1118 (9th Cir. 1986); United States v. Mills, 641 F.2d 785, 790 (9th Cir.). Indeed, even material believed to be exculpatory and, therefore, subject to disclosure under the Brady doctrine, if contained in a witness statement subject to the Jencks Act, need not be revealed until such time as the witness statement is disclosed under the Act. See United States v. Bernard, 623 F.2d 551, 556 (9th Cir. 1979).

The Government reserves the right to withhold the statements of any particular witnesses until after they testify. However, notwithstanding any statements the Government deems necessary to withhold, the Government will disclose witness statements prior to trial in as timely a manner as practicable, provided defense counsel has complied with his obligations under Rules 12.1, 12.2, 16 and 26.2 of the Federal Rules of Criminal Procedure, and provided that defense counsel submitted all reciprocal discovery and "reverse Jencks" statements.

The Government will comply with its Rule 26.2 obligation to

produce for the Defendant's examination statements of witnesses in the Government's possession after, or shortly before, such witnesses testify on direct examination. The Government objects to the Defendant's request that such statements be produced at this time. Similarly, if Rule 12(i) becomes relevant pursuant to suppression proceedings, the Government will comply with obligations to produce statements in accordance with Rule 26.1.

The Government objects to Defendant's request for handwritten I-213 forms to the extent, if any exist, the identical information has been provided in the typewritten versions provided.

### 12. **Residual Request**

The Government objects to Defendant's broad, unarticulated "residual" discovery request. The Government will otherwise comply with its continuing discovery obligations.

### 13. **Preserve Evidence**

The Government does not object to Defendant's motion to preserve evidence to the extent it covers evidence within the Government's possession and discoverable pursuant to Federal Rule of Criminal Procedure 16. The Government objects, however, to Defendant's blanket request to preserve unspecified evidence.

### B. **LEAVE TO FILE FURTHER MOTIONS IS UNNECESSARY**

Defendant moves for leave to file further motions. Although the Government does not oppose in principle Defendant's request to file further motions, the Government would oppose the filing of any further substantive motions to be heard at a motions in limine hearing. If the defendant foresees the need to file further substantive motions, the Government respectfully requests that the defendant request, and the Court set, a separate date for an additional motion hearing, and

that any motions in limine and trial not be set until the conclusion of such hearing.

### III.
### CONCLUSION

Based on the foregoing, the Court should deny Defendants' above-listed motions.

DATED: March 6, 2008

                       Respectfully

                       KAREN P. HEWITT
                       United States Attorney

                       *s/Christopher P. Tenorio*
                       CHRISTOPHER P. TENORIO
                       Assistant U.S. Attorney

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | Criminal Case No.  08CR0274-LAB |
| ) | |
| Plaintiff, ) | **CERTIFICATE OF SERVICE** |
| ) | |
| v. ) | |
| ) | |
| JORDAN ARNOLD, ) | |
| ) | |
| Defendant. ) | |
| ) | |

IT IS HEREBY CERTIFIED that:

I, CHRISTOPHER P. TENORIO, am a citizen of the United States and am at least eighteen years of age.  My business address is 880 Front Street, Room 6293, San Diego, California 92101-8893.

I am not a party to the above-entitled action.  I have caused service of **GOVERNMENT'S RESPONSE AND OPPOSITION TO DEFENDANT'S MOTIONS** on the following party by electronically filing the foregoing with the Clerk of the District Court using its ECF System, which electronically notifies them:

**Holly S. Hanover, Esq.**

I declare under penalty of perjury that the foregoing is true and correct.

Executed on March 6, 2008

Respectfully submitted,

*s/Christopher P. Tenorio*
CHRISTOPHER P. TENORIO
Assistant U.S. Attorney

08CR0274-LAB