1 | KAREN P. HEWITT
  | United States Attorney
2 | CHRISTOPHER P. TENORIO
  | Assistant U.S. Attorney
3 | California State Bar No. 166022
  | 880 Front Street, Suite 6293
4 | San Diego, California  92101-8893
  | Telephone: (619) 557-7843
5 | Christopher.Tenorio@usdoj.gov

6 | Attorneys for Plaintiff
  | United States of America
7
8 |               UNITED STATES DISTRICT COURT
9 |              SOUTHERN DISTRICT OF CALIFORNIA

10 | UNITED STATES OF AMERICA,    )  Criminal Case No.  08CR0274-LAB
   |                              )
11 |              Plaintiff,       )  DATE:    April 18, 2008
   |                              )  TIME:    10:30 a.m.
12 |      v.                      )
   |                              )  GOVERNMENT'S RESPONSE IN
13 | JORDAN ARNOLD,               )  OPPOSITION TO DEFENDANT'S
   |                              )  MOTIONS TO:
14 |              Defendant.       )  1)  DISMISS THE INDICTMENT;
   |                              )  2)  SUPPRESS STATEMENTS; AND
15 |                              )  3)  FOR LEAVE TO FILE FURTHER
   |                              )      MOTIONS
16 |                              )
   |                              )  TOGETHER WITH MEMORANDUM OF
17 |                              )  POINTS AND AUTHORITIES
   |                              )
18

19     COMES NOW the plaintiff, UNITED STATES OF AMERICA, by and through
20 its counsel, Karen P. Hewitt, United States Attorney, and Christopher
21 P. Tenorio, Assistant United States Attorney, and hereby files its
22 response in opposition to Defendant's above-referenced motions.  Said
23 response is based upon the files and records of the case, together
24 with the attached Memorandum of Points and Authorities.
25 //
26 //
27 //
28 //

**I.**

**INTRODUCTION**

The Government incorporates by reference the Statement of Facts provided in its previous response in opposition to Defendant's prior motions, filed on March 7, 2008.

**II.**

**THE INDICTMENT SHOULD NOT BE DISMISSED**

**A.    DEFENDANT PRESENTS NO VIABLE ARGUMENT OF VINDICTIVE PROSECUTION OR GOVERNMENTAL MISCONDUCT**

Defendant moves to dismiss the indictment. Although Defendant alleges vindictive prosecution and governmental misconduct, he does not address the requisite burden of proof nor does he establish a prima facie allegation. As evidence of vindictive prosecution, Defendant refers to a candid out-of-court conversation between Defense counsel and Government counsel regarding the federal interest in Defendant's prosecution. Defendant, however, misunderstands both the standard for vindictive prosecution and the Government's legitimate interest in the present prosecution.

Vindictive prosecution exists where a prosecutor's conduct "appears motivated by a desire to punish the defendant for exercising a legal right." United States v. Jenkins, 504 F.3d 694, 699 (9th Cir. 2007), rehearing en banc denied, 518 F.3d 722 (9th Cir. 2008). Alternatively, vindictive prosecution may be presumed where criminal charges are filed in response to a defendant's invocation of a statutory, procedural, or constitutional right. Id. (quoting United States v. Gallegos-Curiel, 681 F.2d 1164, 1168 (9th Cir. 1982)).

In the present matter, there is no indication that Defendant exercised a statutory, procedural, or constitutional right which

1  precipitated the present prosecution.  Further, there is no evidence
2  that the Government was motivated to pursue prosecution for any reason
3  other than punishment of the crimes charged.
4      Defendant mistakenly presumes that the Government's interest in
5  punishment greater than that available in a State prosecution is per
6  se vindictive.  As the Supreme Court and Ninth Circuit have noted,
7  however, vindictiveness is not presumed where the severity of charges
8  are increased prior to an initial trial.  See United States v.
9  Goodwin, 457 U.S. 368 (1982) (denying presumption of vindictive
10 prosecution where charges are increased from a misdemeanor to a felony
11 prior to an initial trial), cited in United States v. Banks, 682 F.2d
12 841, 845 (9th Cir. 1982).  As the courts have held, "(a) prosecutor
13 should remain free before trial to exercise the broad discretion
14 entrusted to him to determine the societal interest in prosecution."
15 Banks, 682 F.2d at 845 (quoting Goodwin, 457 U.S. at 382).  Here, the
16 Government exercised its discretion to pursue federal charges which
17 it determined more appropriately addressed Defendant's alleged
18 culpability.
19     Because Defendant cannot meet his initial burden of establishing
20 vindictiveness, his motion should be denied.  See Gallegos-Curiel, 681
21 F.2d at 1169 ("there must be a threshold showing of vindictiveness or
22 the likelihood of it before the court is justified in inquiring into
23 the prosecutor's actual motives.")
24 //
25 //
26 //
27 //
28 //

B.  **INDICTMENT DOES NOT RELY ON MANUFACTURED FEDERAL INTERSTATE NEXUS**

Defendant's next argument rests primarily on the presumption that prosecution of intrastate conduct is not permitted under §§ 2422(b) and 1591. Defendant, however, ignores case law recognizing the validity of such prosecutions. The Eleventh Circuit answered this question directly recently in United States v. Evans, 476 F.3d 1176 (11th Cir. 2007), a case involving charges under the same statutes as in the present case.

In Evans, the court noted Supreme Court precedent that recognized Congress' authority to regulate intrastate conduct that substantially affects interstate commerce. Id. at 1178. In particular, conduct "in or affecting interstate or foreign commerce" may be considered in the aggregate in consideration of Congress' explicit intention to regulate human trafficking. Id. at 1179. Such conduct may include the use of hotels that served interstate travelers and the distribution of condoms that traveled in interstate commerce. Id. at 1179. The use of telephones in the commission of the offenses has also been noted as the use of instrumentalities of interstate commerce, even without evidence that the calls were routed through an interstate system. Id. at 1180-81.

The District of Connecticut also recently addressed Congress' authority to regulate intrastate conduct under § 1591. See United States v. Paris, No. 03:06-CR-64(CFD), 2007 WL 3124724 (D. Conn. Oct. 24, 2007). Drawing on the authority of the Supreme Court's seminal opinion of United States v. Lopez, 514 U.S. 549, 558-59 (1995), the Paris court noted that Congress' commerce authority "to regulate those activities having a substantial relation to interstate commerce, i.e.,

those activities that substantially affect interstate commerce." Id., 2007 WL 3124724, at *7. As the Paris court recognized, § 1591 satisfies each of the relevant considerations necessary to determine whether a law regulates an activity that has a substantial effect on interstate commerce:

> First, commercial sex acts are economic in nature. Second, section 1591 has a jurisdictional element, requiring the jury to find that the activity affected interstate commerce. Third, in enacting the Trafficking Victims Protection Act, Congress found that "Trafficking in persons substantially affects interstate and foreign commerce." 22 U.S.C. § 7101(b)(12). Fourth, . . . there is a clear nexus between Paris's intrastate recruiting and obtaining of women to commit commercial sex acts, the interstate aspects of Paris's business, and the interstate market for commercial sex.

Id. at *8 (citing Evans, 476 F.3d at 1179).

Nonetheless, Defendant alleges that the Government "patently contrived" a federal nexus for the crimes charged. In support, Defendant argues that "[t]here was no intention by anyone involved in the case, to travel over state lines, or conduct any business outside San Diego." Defendant may have confused the requirements of § 2422(b) with those of § 2422(a), however, which criminalizes the actual or attempted persuasion of an individual to travel in interstate commerce to engage in prostitution or criminal sexual activity. Interstate travel is not required for § 2422(b).

Finally, Defendant's assertion that the Government's reference to Craigslist on the internet constitutes a manufacturing of a federal crime is undermined by the consistent recognition by courts that such use of the internet is an instrumentality and channel of interstate commerce. See, e.g., United States v. Sutcliffe, 505 F.3d 944, 952 (9th Cir. 2007). Interstate commerce is implicated even where the transmission does not cross state lines. See, e.g., United States v.

1  MacEwan, 445 F.3d 237, 245-46 (3rd Cir. 2006), cert. denied, 127 S.
2  Ct. 208 (2007).  Contrary to Defendant's suggestion otherwise,
3  therefore, the Government can not be credited with manufacturing the
4  federal jurisdiction for the present case.

   **C.   THE GOVERNMENT HAS COMPLIED WITH ITS NECESSARY DISCOVERY OBLIGATIONS**

7       As a final argument, Defendant alleges that the Government
8  committed misconduct by failing to provide evidence that Defendant
9  acquired through alternative sources.  Defendant, however,
10 misconstrues the Government's discovery obligations for the current
11 charges.

12      Although Defendant provides authority upon which the court may
13 base a sanction for a discovery violation, Defendant fails to identify
14 the basis for any alleged violation.  The Government must disclose
15 exculpatory evidence within its possession that is material to the
16 issue of guilt or punishment.  Brady v. Maryland, 373 U.S. 83 (1963);
17 United States v. Agurs, 427 U.S. 97 (1976).  The Government is not
18 required, however, to provide to Defendant all evidence known or
19 believed to exist which pertains to the credibility of the
20 Government's case.  As the Ninth Circuit Court of Appeals stated in
21 United States v. Gardner, 611 F.2d 770 (9th Cir. 1980):

> [T]he prosecution does not have a constitutional duty to disclose every bit of information that might affect the jury's decision; it need only disclose information favorable to the defense that meets the appropriate standard of materiality.

25 Id. at 774-75 (citations omitted).  See also United States v. Flores,
26 540 F.2d 432, 438 (9th Cir. 1976) (Brady does not create any pretrial
27 discovery privileges not contained in the Federal Rules of Criminal
28 Procedure).

Pursuant to its obligations dictated in Brady, Agurs, and Federal Rule of Criminal Procedure 16, the Government has provided to Defendant all discoverable evidence pertaining to the present charges and the named victims. As Defendant has gathered from references in reports provided by the Government, and from Defendant's prior public defender, the Government has investigated additional potential crimes and has interviewed additional potential victims. None of the information provided by these additional witnesses, however, has produced exculpatory evidence that is material to the issue of Defendant's guilt or punishment for the counts currently charged. Unless and until the additional witnesses are named as additional victims, the Government does not intend to rely on their testimony at trial. As such, the information provided thus far is akin to that received from confidential informants.

As the Supreme Court has recognized, the government may withhold the identity of persons who furnish confidential information to law enforcement officers. Roviaro v. United States, 353 U.S. 53, 59 (1957). The concealment of an informant's identity is justified to permit the continuation of a secret investigation, or to protect the parties and their families from retaliation or harm. Whitaker v. Garcetti, 291 F.Supp.2d 1132, 1146 n.31 (C.D. Cal. 2003).

In the present case, the San Diego Police Department and FBI have received information from other witnesses which they continue to investigate. Based upon information received thus far, the Government believes the revelation of their identities may jeopardize their safety. Because any revelation is premature, the burden must turn to the defendant to justify its immediate disclosure.

In ruling on disclosure requests, a trial court must balance the

1 extent to which disclosure would be relevant and helpful to the
2 defendant's case and the Government's interest in protecting the
3 identity of a particular informant. In so doing, the court must
4 consider, "the public interest in protecting the flow of information
5 against the individual's right to prepare his defense." United States
6 v. Spires, 3 F.3d 1234, 1238 (9th Cir. 1993), quoting Roviaro, 353
7 U.S. at 69. A defendant, however, has the burden to make "a 'minimal
8 threshold showing' that disclosure would be relevant to at least one
9 defense." United States v. Spires, 3 F.3d 1234, 1238 (9th Cir. 1993);
10 United States v. Sai Keung Wong, 886 F.2d 252, 256 (9th Cir. 1989);
11 see also, United States v. Ordonez, 722 F.2d 530, 539 (9th Cir.
12 1983)(holding hearing justified where Defendant alleged mistaken
13 identity).
14   Here, the Government has determined that testimony from the
15 potential witnesses are not necessary as evidence for the current
16 charges. As such, there is no reason to reveal the informants'
17 identity at this time unless Defendant can provide further
18 justification. Until that time, however, Defendant must first meet
19 his burden of making a minimal threshold showing of relevance. See
20 Spires, 3 F.3d at 1238.

**III.**

**DEFENDANT'S STATEMENTS NEED NOT BE
SUPPRESSED AND NO HEARING IS NECESSARY**

**A.   INTERVIEWING AGENTS PROVIDED MIRANDA WARNINGS**

25   Defendant moves to suppress statements he made to an SDPD Vice
26 Detective and FBI agent on October 12, 2007. On that date, Defendant
27 was arrested upon suspicion of transporting a juvenile for purposes
28 of prostitution. Arresting officers took Defendant into custody and

transported him to the police station. There, SDPD Vice Detective Dwayne Glazewski advised Arnold of his <u>Miranda</u> rights. FBI Agent Josephina Regula witnessed the advisal. Defendant has not established a factual dispute regarding the advisal.

### B.   DEFENDANT VOLUNTARILY, KNOWINGLY, AND INTELLIGENTLY WAIVED HIS RIGHTS

In response to the <u>Miranda</u> advisal, Defendant stated, "I'm gonna listen to my mom and I'm gonna get an attorney." Officers stopped questioning. Defendant, however, asked what type of questions the agents would have asked him. Defendant insisted that he had done nothing wrong, and that the only thing he had done was "to be a good friend and help people do whatever they wanted to do." Detective Glazewski told Defendant that they would not ask him questions because he was asking for a lawyer. Defendant, however, insisted on talking. Detective Glazewski told Defendant that he would not force Defendant to speak with them. Again, Defendant stated that he wanted to know what questions were going to be asked.

Detective Glazewski and Agent Regula then asked Defendant if he knew about the prostitution activities of the two juveniles he had accompanied earlier in the evening. Arnold admitted knowing about their activities, their juvenile status, and that he was driving them to perform acts of prostitution. The officers ended the interview after Defendant persisted in playing word games and making various philosophical statements.

Defendant argues that he "clearly asserted" his right to have counsel present for questioning. Defendant statement that he's "gonna get an attorney," however, was an ambiguous assertion of his right to

have an attorney present during questioning.[1] Further, Defendant did not invoke his Fifth Amendment right to remain silent.

Where a defendant says something that is ambiguous as to whether it is a waiver, the interviewing officers may, but are not required to, inquire further to determine whether a waiver is intended. Davis v. United States, 512 U.S. 452 (1994). A defendant's invocation must be unambiguous. See, e.g., id. at 458-59 (no clear invocation where, after first waiving counsel, suspect says "Maybe I should talk to a lawyer"); Clark v. Murphy, 331 F.3d 1062 (9th Cir. 2003); United States v. Doe, 170 F.3d 1162, 1166 (9th Cir. 1999). Because Defendant's statement was ambiguous, the interviewing officers would have been permitted to ask additional questions to clarify Defendant's intentions. They did not. The officers explained that they would not ask additional questions because they interpreted Defendant's statement to be an invocation of his right to counsel. This conclusion, however, does not end the inquiry.

Questions may follow an invocation of the right to an attorney where a suspect thereafter volunteers information. Oregon v. Bradshaw, 462 U.S. 1039 (1983) (citing Edwards v. Arizona, 451 U.S. 477, 485 (1981)) (finding defendant reinitiated questioning by asking "what's going to happen to me now?"). After a defendant reopens the

---

[1] Defendant provides in his pleading that officers responded that "Moms can either hurt your [sic] or help you. It is up to you, man." The response, however, is not supported by the officers' reports. Defendant indicates that he will be filing a declaration in the near future – which perhaps will support the alleged statement.

discussion, the police may further interrogate the defendant notwithstanding the previous invocation. United States v. Michaud, 268 F.3d 728, 735 (9th Cir. 2001). Here, both Detective Glazewski and Agent Regula report that Defendant insisted on talking, and provoked questioning by asking more than once what they wanted to ask him. The officers provided the questions, as requested, and ultimately terminated the interview upon concluding that Defendant's responses became evasive.

Ultimately, even assuming Defendant invoked his right to counsel, he volunteered a statement regarding his culpability and reopened discussions with the interviewing agents. At no point did Defendant invoke his Fifth Amendment right to remain silent. His statements provide evidence of an implicit waiver of this right as well.

### C.  **DEFENDANT MADE A VOLUNTARY STATEMENT**

Defendant further argues that his statement was not voluntarily made. To the contrary, Detective Glazewski explicitly informed Defendant that he would not force Defendant to speak with them. Defendant, nonetheless, persisted in requesting what the officers' questions would be. For his part, Defendant has not established a factual dispute regarding the voluntary nature of his statements.

### D.  **DEFENDANT'S REQUEST FOR AN EVIDENTIARY HEARING SHOULD BE DENIED**

Defendant requests an evidentiary hearing regarding his suppression motion. Under Ninth Circuit and Southern District precedent, as well as a Southern District Local Rule, however, a defendant is entitled to an evidentiary hearing on a motion to suppress only when the defendant adduces specific facts sufficient to require the granting of defendant's motion. See United States v.

Batiste, 868 F.2d 1089, 1093 (9th Cir. 1989) (where "defendant, in his motion to suppress, failed to dispute any material fact in the government's proffer, . . . . the district court was not required to hold an evidentiary hearing"); United States v. Moran-Garcia, 783 F. Supp. 1266, 1274 (S.D. Cal. 1991) (boilerplate motion containing indefinite and unsworn allegations was insufficient to require evidentiary hearing on defendant's motion to suppress statements); Crim. L. R. 47.1.  There has been no such proffer by Defendant here.

Requiring a declaration from a defendant in no way compromises defendant's constitutional rights, as declarations in support of a motion to suppress cannot be used by the government at trial over a defendant's objection.  See Batiste, 868 F.2d at 1092 (proper to require declaration in support of Fourth Amendment motion to suppress); Moran-Garcia, 783 F. Supp. at 1271-74 (extending Batiste to Fifth Amendment motion to suppress).  Nor is it reasonable to believe that a defendant will have less information than the Government, and so should not be required to provide proof to support a motion.  See Batiste, 868 F.2d at 1092.  At least in the context of motions to suppress statements, which require police misconduct incurred by Defendant while in custody, Defendant certainly should be able to provide the facts supporting the claim of misconduct.  Without such a proffer, no need for an evidentiary hearing has been made.

Moreover, any argument that 18 U.S.C. § 3501 requires an evidentiary hearing in every case is of no merit.  Section 3501 requires only that the Court make a pretrial determination of voluntariness "out of the presence of the jury." Nothing in section 3501 betrays any Congressional intent to alter the longstanding rule

vesting the form of proof on matters for the court in the discretion of the court. See Batiste, 868 F.2d at 1092 ("Whether an evidentiary hearing is appropriate rests in the reasoned discretion of the district court.") (citation and quotation marks omitted). Therefore, no evidentiary hearing is warranted in this case.

The Ninth Circuit has expressly stated that a government proffer based on the statement of facts attached to the complaint is alone adequate to defeat a motion to suppress where the defense fails to adduce specific and material facts. See Batiste, 868 F.2d at 1092. As Defendant has failed to provide a declaration alleging specific and material facts, the Court would be within its discretion to deny Defendant's motion based solely on the statement of facts attached to the complaint in this case, without any further showing by the Government.

**IV.**

**THE GOVERNMENT DOES NOT OPPOSE LEAVE TO FILE FURTHER MOTIONS**

Although the Government does not oppose in principle Defendant's request to file further motions, the Government would oppose the filing of any further substantive motions that would not be entertained by the court until the time set aside for motions in limine. If the defendant foresees the need to file further substantive motions, the Government respectfully requests that the defendant request, and the Court set, a separate date for an additional motion hearing, and that any motions in limine and trial not be set until the conclusion of such hearing.

//
//
//

**V.**

**CONCLUSION**

Based on the foregoing, the Court should deny Defendant's motion to dismiss the indictment and suppress statements, and grant his motion for leave to file further motions.

DATED: April 8, 2008

                                  Respectfully

                                  KAREN P. HEWITT
                                  United States Attorney

                                  *s/Christopher P. Tenorio*
                                  CHRISTOPHER P. TENORIO
                                  Assistant U.S. Attorney

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | Criminal Case No.  08CR0274-LAB |
| Plaintiff, ) | **CERTIFICATE OF SERVICE** |
| v. ) | |
| JORDAN ARNOLD, ) | |
| Defendant. ) | |

IT IS HEREBY CERTIFIED that:

I, CHRISTOPHER P. TENORIO, am a citizen of the United States and am at least eighteen years of age.  My business address is 880 Front Street, Room 6293, San Diego, California 92101-8893.

I am not a party to the above-entitled action.  I have caused service of **GOVERNMENT'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTIONS** on the following party by electronically filing the foregoing with the Clerk of the District Court using its ECF System, which electronically notifies them:

**Holly S. Hanover, Esq.**

I declare under penalty of perjury that the foregoing is true and correct.

Executed on April 11, 2008

                                                         Respectfully submitted,

                                                         *s/Christopher P. Tenorio*
                                                         CHRISTOPHER P. TENORIO
                                                         Assistant U.S. Attorney