HOLLY S. HANOVER, Esq.
California State Bar Number 177303
1016 La Mesa Ave.
Telephone: (619) 295-1264
E-Mail: Netlawyr@aol.com
Attorney for Defendant, Mr. Jordan Arnold

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF CALIFORNIA**
**(THE HON. LARRY A. BURNS)**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>　　　Plaintiff,<br><br>v.<br><br>JORDAN ARNOLD,<br>　　　Defendant. | CASE NO. 08cr0274-LAB<br><br>DATE: April 23, 2005<br>TIME: 10:00 a.m.<br><br>SUPPLEMENTAL STATEMENT OF FACTS in response to the GOVERNMENT'S RESPONSE TO MOTION TO DISMISS INDICTMENT AND <u>SUPPRESS STATEMENTS</u> |

**I.**

**<u>SUPPLEMENTAL STATEMENT OF FACTS</u>**

　　The defense hereby incorporates all earlier statements of fact filed previously on this case. In addition to those, defense counsel received a call from the government late last week, after the April 18 court date was continued, notifying the defense that the government had "just received a recording of Mr. Arnold's statements and other statements, and would be attempting to put that and other recordings out in digital audio file format before the hearing date which was re-scheduled to April 23, 2008. The claim that the government had "just received these recordings rings empty because the government's own agent, SA Josefina Regula, was present for most, if not all of the interviews conducted with Mr. Arnold and other witnesses. Is the government now claiming that its own agents are not turning over evidence to them? This claim seems incredulous.

　　Additionally, the transcript which the government has filed with

the court is incomplete.  Defense counsel will be attaching a copy of the complete transcript, which was obtained through the office of the Public Defender, turned over to them by the District Attorney.  If the court wishes to get a true sense of the interrogation, it should listen to the audio file interview in it's entirety.  Even the completed transcript doesn't seem to clearly indicate how many times Mr. Arnold attempted to tell officers that he wanted to follow his mother's advice and get an attorney, but was actually interrupted by agents before he could complete his sentence.

The following are specific examples from this transcript which support the defense's argument:

**First, none of the participants in this interview were in an alert state of mind, which means that both Mr. Arnold was not thinking clearly to make a knowing intelligent waiver, but also the agents were also speaking in ways which perhaps they normally would not have.**

1. At the very beginning of the interview, Mr. Arnold complained of experiencing a lack of sleep. (Defense transcript (hereinafter "DT"), Page 1, line 6)
2. SA Regula claimed at the beginning that they (the officers) hadn't slept for 2 days. (Pg. 1, line 10)
3. Detective Glasewski was also displaying signs of lack of sleep.
    i. At the beginning of the interview, he asked Mr. Arnold if he had a job, and then right after Mr. Arnold said yes, the officer asked the same question again. (Page 2, line 11-16)
    ii. Glasewski seemed to have trouble finding the right words to use during the interrogation (Page 7, lines 9-11)
    iii. There are several other instances like this throughout

|   | |
|---|---|
| 1 | the transcript, as well as many instances where |
| 2 | officers, particularly officer Glasewski shouts at and |
| 3 | breaks down into using obscenities at Mr. Arnold. |

**Second, Mr. Arnold told agents many times, in many ways that he wished to speak with an attorney and have that attorney present before he spoke with agents.**

4. Mr. Arnold says, "I have an attorney", (Page 4, line 11)
5. Mr. Arnold says, "Actually", in response to agents asking him if he wanted to talk to his lawyer (was attempted to invoke his rights here, but is interrupted by agents before he can finish) (Page 5 line 6)
6. "My Mom tells me no matter what, get an attorney. No matter what, so I guess I should just listen to my Mom's intuition". (Page 5, lines 9-10)
7. Mr. Arnold repeats to them his desire to have an attorney present before he talks to officers. "I do want to talk, but I'm just listening to my Mom's..." but again he is interrupted again before he can finish and agents attempt to talk him out of it, by saying, "Well, Mom's can either hurt you or help you. It's up to you man". (Page 6, line 1-2)
8. Agents then imply that by following his mother's advice, Mr. Arnold, at age 19, was not being a man. Page 6, agents try to convince him that is Mom advice isn't good for him - "Moms can either hurt your or help you".
9. Then the officer implies that by following his mother's advice, he isn't being a man. "It's up to you, not your Moms. How old are you?". Mr. Arnold responds that he is 19, and officer Glasewski said, "That's right. You a man now?" Mr. Arnold said he

1     considered himself to be still growing up.  Glasewski then says

2     "I"m not saying you're not, but you're into manhood now".

3     **Finally, Agent's reaction to Mr. Arnold's invocation was such that**

4 **they believed he was invoking his rights as well, but they continue to**

5 **try and keep the conversation going.**

6 10.  Officer Glasewski says to Mr. Arnold, "I mean it's not a big deal.

7     I mean you have your right.  I'm not going to deny that for you.

8     I understand if you don't want to talk to us it's fine". (Page 5,

9     lines 26-28)

10 11.  A short while later, Officer Glasewski told Mr. Arnold, "Alright,

11     we're going to let you go about your way, but we're gonna book

12     you", as if the questioning was over.  Mr. Arnold then asked when

13     he could talk with his attorney, and agents responded that it

14     would be after his arraignment.  Mr. Arnold asked if that would be

15     the next day, and officer Glasewski replied "That ain't gonna

16     happen, bro, that ain't gonna happen".

17     Mr. Arnold never waived his right to have an attorney present. He

18 simply asked officer Glasewski what it was that agents believed that

19 happened. (Page 8, lines 7-8)  Officers replied that they believed he

20 was pimping the girls that they had spoken to, and from that point, a

21 whole philosophical discussion about pimping ensued and no further

22 discussion was made about Mr. Arnold's wishing to have an attorney

23 present.  Mr. Arnold was not the person that kept the conversation

24 going, it was the agents that kept the conversation going.

25                     **Respectfully submitted,**

26 **Dated: April 22, 2008**            *s/ Holly Hanover*

27                              Holly S. Hanover
                             Attorney for Mr. Jordan Arnold

28                              E-mail: Netlawyr@aol.com